[No. B224839. Second Dist., Div. One. Aug. 31, 2011.]

AMBER DUICK, Plaintiff and Respondent, v.
TOYOTA MOTOR SALES, U.S.A., INC., et al., Defendants and Appellants.

COUNSEL

Ogletree, Deakins, Nash, Smoak & Stewart, Vince M. Verde and Christopher J. Archibald for Defendants and Appellants.

Tepper Law Firm, Nicholas Tepper and Heather A. Hickman for Plaintiff and Respondent.

OPINION

**ROTHSCHILD, J.**—Defendants Toyota Motor Sales, U.S.A., Inc. (Toyota), and Saatchi & Saatchi North America, Inc. (Saatchi), appeal from the denial of their motion to compel arbitration of plaintiff Amber Duick's claims. We affirm because the putative contract is void on account of fraud in the inception.

## BACKGROUND[1]

Duick's claims arise from her apparently unwitting participation in an Internet-based advertising campaign launched by defendants in connection with Toyota's Matrix automobile. The campaign, known as "Your Other You," "consisted of sending an unwitting recipient emails from an unknown individual." During the campaign, any visitor to the Toyota Matrix Web site (player 1) could designate another person (player 2) for participation in the Your Other You "interactive experience." Player 2 would then receive an e-mail purportedly from player 1, inviting player 2 to click a hyperlink that was in some manner "identified with Toyota." The link would direct player 2 to a Web page entitled "Personality Evaluation," which displayed a drawing of a door with the word "Begin" underneath. Clicking on the door would direct player 2 to a second Web page entitled "Personality Evaluation Terms and Conditions." In order to continue beyond that page, according to evidence introduced by defendants, player 2 was required to scroll through certain text (the terms and conditions) and, at the end of that text, click a box next to the following sentence: "I have read and agree to the terms and conditions."

The first paragraph of the terms and conditions states, "You have been invited by someone who has indicated that he/she knows you to participate in Your Other You. Your Other You is a website provided by [Toyota] that offers you . . . an interactive experience." The second paragraph further states, "If

---

[1] Our summary of the facts is drawn from both the allegations of the complaint and the evidence introduced in connection with the motion to compel arbitration.

you review and agree to the Terms and Conditions detailed below . . . you may participate in a 5 day digital experience through Your Other You. . . . You may receive email messages, phone calls and/or text messages during the 5-day experience." A subsequent paragraph also states, "You understand that by agreeing to these Terms, you are agreeing to receive emails, phone calls and text messages from Toyota during the 5-day experience of Your Other You." The terms and conditions contain the following arbitration provision: "You agree that . . . any and all disputes, claims, and causes of action arising out of, or connected with, Your Other You . . . shall be resolved individually, without resort to any form of class action, and exclusively by arbitration to be held solely in Los Angeles, California under the auspices of the American Arbitration Association and pursuant to its Commercial Dispute Resolution Rules and Procedures."

The record before us does not describe the further Web pages (if any) to which player 2 would be directed after agreeing to the terms and conditions. Over the next several days, however, player 2 would receive e-mails of an unsettling nature from an "unknown individual" who appeared to have access to some personal information concerning player 2 (information that presumably was provided by player 1, without player 2's knowledge, at the initial stage).

Duick was apparently cast in the role of player 2. She received "an unsolicited email asking [her] to take a personality test." She does not remember clicking the box signifying her agreement to the terms and conditions, and she claims that for various technical reasons the text of the terms and conditions was impossible to read in its entirety.

In any event, Duick later began to receive e-mails from an individual identifying himself as "Sebastian Bowler." The text of the first e-mail reads, "Amber mate! Coming 2 Los Angeles Gonna lay low at your place for a bit. Till it all blows over. Bringing Trigger." Duick received another e-mail from Bowler the following day, accurately stating her previous home address, describing it as a "Nice place to hide out," and advising her that "Trigger don't throw up much anymore, but put some newspaper down in case." The e-mail also provided a link to Bowler's MySpace page, which portrayed him as a 25-year-old Englishman and "a fanatical English soccer fan who enjoyed drinking alcohol to excess"; the page also displayed photographs of a pit bull dog.

Additional e-mails from Bowler to Duick over the next few days purported to describe his cross-country journey by car to visit her, including photos and videos of his travels and references to his efforts to evade law enforcement ("I seem to have lost the coppers for now, so I'm all good, mate"; "Had a

brush with the law last night. Anyway, hopefully I'll have lost them by the time I get to your place."). One message explained that Bowler "ran into a little problem at the hotel," and Duick subsequently received an e-mail from an individual identifying himself as "Jimmy Citro," purporting to be the manager of a motel and billing Duick for the damage Bowler had done to the motel's property. The final e-mail included a link to a video revealing that Bowler was a fictional character and that the entire sequence of e-mails was an elaborate prank, all part of an advertising campaign for the Toyota Matrix.

On September 28, 2009, Duick filed suit against Toyota and Saatchi, alleging eight causes of action including intentional infliction of emotional distress, negligence, and false advertising, and seeking "compensatory damages of not less than $10,000,000" as well as other forms of relief. After defendants demurred and Duick voluntarily filed a first amended complaint, defendants moved to compel arbitration on the basis of the arbitration provision in the terms and conditions.

The trial court denied defendants' motion. Defendants timely appealed.

## STANDARD OF REVIEW

In reviewing an order denying a motion to compel arbitration, we review the trial court's factual determinations under the substantial evidence standard, and we review issues of law de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547].)

## DISCUSSION

Duick contends that the arbitration provision in the terms and conditions is unenforceable because, assuming that she did agree to the terms and conditions by clicking the appropriate box, the entire agreement is void because of fraud in the inception or execution. We agree.

"California law distinguishes between fraud in the 'execution' or 'inception' of a contract and fraud in the 'inducement' of a contract. In brief, in the former case ' "the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void*. In such a case it may be disregarded without the necessity of rescission." ' [Citation.] Fraud in the inducement, by contrast, occurs when ' "the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable*.

In order to escape from its obligations the aggrieved party must *rescind* . . . ." ' [Citation.]" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (hereafter *Rosenthal*).) "[C]laims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law. If the entire contract is void *ab initio* because of fraud, the parties have not agreed to arbitrate any controversy . . . ." (*Id.* at p. 416.)

■ Fraud in the inception will render a contract "wholly void, despite the parties' apparent assent to it, when, ' "*without negligence on his part*, a signer attaches his signature to a paper assuming it to be a paper of a different character." ' [Citations.]" (*Rosenthal, supra*, 14 Cal.4th at p. 420.) Thus, "[i]f a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has a reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent." (Rest.2d Contracts, § 163; see also *Rosenthal, supra*, 14 Cal.4th at pp. 420, 423–424, 428–429 [quoting with approval and applying the Restatement doctrine]; *Jones v. Adams Financial Services* (1999) 71 Cal.App.4th 831, 837–838 [84 Cal.Rptr.2d 151]; *Larian v. Larian* (2004) 123 Cal.App.4th 751, 762–763 [19 Cal.Rptr.3d 916]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 301, pp. 328–329.)

The terms and conditions were drafted by defendants, not by Duick. A person in the role of player 2, such as Duick, could not access the terms and conditions without first clicking "Begin" on a Web page entitled "Personality Evaluation," created by defendants. The terms and conditions themselves were entitled "Personality Evaluation Terms and Conditions." Defendants thereby led Duick to believe that she was going to participate in a personality evaluation and nothing more. In particular, a reasonable reader in Duick's position would not have known that she was signing up to be the target of a prank.[2]

It might have been possible to draft the terms and conditions in such a way as to correct that misimpression, but defendants did not do so. We have read the terms and conditions in their entirety, and we conclude that, as written, they could not have alerted a reasonable reader in Duick's position to the true nature of what defendants proposed to do to her. Reasonable readers of the terms and conditions would not have understood that they were agreeing to be victims of a prank or were otherwise agreeing to be subjected to conduct of the kind involved in Your Other You. Because of their vagueness and opacity (such as unexplained references to an "interactive experience" and a

---

[2] Defendants do not contend that the prank was actually a part of a personality evaluation. It was merely a prank that was part of an advertising campaign.

"digital experience"), the terms and conditions made it impossible for someone in the role of player 2, such as Duick, to understand what defendants proposed to do pursuant to the putative agreement.

The only possible grounds for a contrary conclusion would be certain statements in the terms and conditions such as "You may receive email messages, phone calls and/or text messages during the 5-day experience" and "you are agreeing to receive emails, phone calls and text messages from Toyota during the 5-day experience." Those statements too, however, would not have informed a reasonable reader of the true character of the proposed contract or corrected the misimpression created by the use of the phrase "Personality Evaluation." For example, a reasonable person in Duick's position would not have understood that by agreeing that she may receive e-mail messages, she was agreeing to receive frightening or disturbing messages (such as a bill for damages to a motel) that had no apparent or even traceable connection to the terms and conditions.

It is unsurprising, of course, that the terms and conditions were drafted in such a way as to conceal from Duick the true nature of the conduct to which she was going to be subjected—Duick was undisputedly the target of a prank, and it would make no sense for the pranksters to warn the target in advance. Our conclusion that the contract is void because of fraud in the inception is not, however, based on any alleged facts concerning defendants' intent. Rather, our conclusion is based solely on the following propositions: (1) defendants were the drafters and creators of the relevant Web pages, including the full text of the terms and conditions; (2) by drafting and presenting the terms and conditions as they did, including the use of the phrase "Personality Evaluation," defendants misrepresented and concealed (whether intentionally or not) the true nature of the conduct to which Duick was to be subjected; and (3) Duick was not negligent in failing to understand the true nature of the conduct to which she was to be subjected, because no reasonable person in her position would have understood it.

For all of the foregoing reasons, we conclude that defendants deprived Duick of a reasonable opportunity to know the character of the proposed contract. The contract is consequently void because of fraud in the inception, and every part of it is therefore unenforceable, including the arbitration provision.

In their supplemental brief concerning fraud in the inception, defendants present no persuasive arguments to the contrary. Defendants rely principally on the assertion that Duick had ample opportunity to read the terms and conditions in their entirety and without any extraneous misrepresentations by defendants (e.g., defendants "were not even in [Duick's] presence at the time

she [agreed to the terms and conditions]"). The point that defendants fail to address, however, is that it would have availed Duick nothing to read and reread the terms and conditions, which were drafted in such a way as not to apprise her of what defendants intended to do to her. For the reasons already given, defendants' conduct "deprived [Duick] of a reasonable opportunity to learn the character" of the putative agreement, regardless of her access to the agreement's terms.[3] (*Rosenthal, supra*, 14 Cal.4th at p. 428.) The putative contract is therefore void because of fraud in the inception.[4]

Our resolution of this issue makes it unnecessary for us to address the remainder of defendants' arguments.

## DISPOSITION

The order is affirmed. Respondent shall recover her costs of appeal.

Mallano, P. J., and Johnson, J., concurred.

---

[3] We note that Duick claims that, for technical reasons, it was not possible for her to read the terms and conditions in their entirety. The claim is not relevant to our analysis, however, because even if Duick could have read and did read the terms and conditions in their entirety, she still would not have known the true character of the proposed agreement.

[4] Our use of the phrase "fraud in the inception" should not be taken to suggest that we have made or are relying on any determinations of defendants' intent or culpability with respect to their misrepresentation. Our analysis depends on the propositions that defendants made a misrepresentation and that, as a result, Duick was not negligent in failing to learn the character of the proposed agreement. But we express no opinion as to whether defendants' misrepresentation was intentional, negligent, or even innocent.