Filed 3/30/15  Tobin v. Hilton Worldwide CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RONALD TOBIN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HILTON WORLDWIDE, INC., et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B255238<br>(Super. Ct. No. 1438768)<br>(Santa Barbara County) |

Ronald Tobin was employed as a painter at the Fess Parker DoubleTree by Hilton Resort in Santa Barbara.  After his employment was terminated, he brought this action against Hilton Worldwide, Inc. (Hilton), Fess Parker Hotel Company, LLC (Fess Parker) and three individual defendants, Matthew La Vine, Eric Maas and Jeff Moushey, for racial discrimination, wrongful termination and related claims.  Defendants moved to compel arbitration based on an employment agreement between Tobin and Hilton.  The trial court granted the motion as to five of the eight causes of action against Hilton and denied the motion as to the other defendants.  As permitted by the California Arbitration Act (CAA), it stayed the arbitration between Tobin and Hilton pending litigation of the

causes of action against the other defendants and the nonarbitrable claims against Hilton. (See Code Civ. Proc., § 1281.2, subd. (c)(4).)[1]

Generally, nonsignatories may not enforce an arbitration agreement. (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142.) Fess Parker and the individual defendants contend they are entitled to enforce the agreement between Tobin and Hilton as third party beneficiaries or as Hilton's agents. The record fails to support either theory. It does, however, support Hilton's contention that the trial court erred by concluding the sixth cause of action for violation of Labor Code section 201 is exempt from arbitration under Labor Code section 229. That statutory exemption applies only to claims for unpaid wages. (*Lane v. Francis Capital Management* LLC (2014) 224 Cal.App.4th 676, 683 (*Lane*).) The sixth cause of action does not seek unpaid wages; therefore, we reverse the portion of the trial court's order denying Hilton's motion to arbitrate that claim. Otherwise, we affirm.

FACTS AND PROCEDURAL BACKGROUND

When Tobin was hired in 2010, he executed an agreement re at-will employment and arbitration (Agreement) which provides, in part: "The Company and I . . . agree and acknowledge that final and binding arbitration shall be the exclusive forum to hear and decide any dispute between the Company and me . . . . Except for the claims carved out above, this Agreement includes all common-law and statutory claims, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, unfair competition or misappropriation of trade secrets, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected status which may be brought under applicable state or federal law." The Agreement, which does not identify "the Company," is signed by Laura Borusiewicz on the Company's behalf.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

After his employment was terminated in 2013, Tobin filed a complaint against Hilton and Fess Parker for (1) discrimination, (2) harassment, (3) retaliation, (4) failure to investigate, (5) discriminatory discharge, (6) violation of Labor Code section 201 et seq., (7) violation of unlawful competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), and (8) a separate, unrelated UCL violation. The first three causes of action include the individual defendants, whom Tobin alleges are employees of "Hilton/Fess Parker."

The first five causes of action are based upon allegations of race discrimination in violation of the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.) The sixth cause of action is based on the allegation that Tobin was not provided with a final paycheck until two weeks after termination. The UCL claims seek injunctive relief based upon allegations of interference with Tobin's right to vote and of issues relating to mold in the hotel.

Shortly after the complaint was filed, and before initiation of discovery, defendants moved to compel arbitration of all claims. Tobin opposed the motion. The trial court issued a tentative decision finding the Agreement is binding between Tobin and Hilton, as his employer, but only as to the FEHA claims. It also found that the CAA is controlling pursuant to the terms of the Agreement. The court requested briefing as to the appropriate remedy under section 1281.2.

Following additional briefing, the trial court adopted its tentative ruling. Citing section 1281.2, subdivision (c)(4), it stayed the arbitration between Tobin and Hilton on the FEHA claims pending litigation of Tobin's causes of action against the other defendants and the three nonarbitrable claims against Hilton. Defendants appeal.[2]

---

[2] Defendants do not appeal the trial court's decision that the two UCL causes of action are not subject to arbitration.

DISCUSSION

*Standard of Review*

On appeal from an order denying a petition to compel arbitration, we review the trial court's factual determinations under the substantial evidence standard, and we review the legal issues independently. (*Duick v. Toyota Motor Sales, U.S.A., Inc.* (2011) 198 Cal.App.4th 1316, 1320; *Provencio v. WMA Securities, Inc.* (2005) 125 Cal.App.4th 1028, 1031.) Specifically, we review independently the question of whether and to what extent a nonsignatory may enforce an arbitration agreement. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708; *DMS Services, Inc. v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352 (*DMS Services*).) The trial court's decision to stay arbitration under section 1281.2, subdivision (c), is reviewed for abuse of discretion. (*Lindemann v. Hume* (2012) 204 Cal.App.4th 556, 565-568.)

*Nonsignatories' Enforcement of Arbitration Agreement*

As a general rule, only parties to an arbitration agreement are bound by it. (*Buckner v. Tamarin, supra,* 98 Cal.App.4th at p. 142; *Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 598.) An arbitration agreement may be enforced by a nonsignatory if an exception applies, such as when the nonsignatory is a third party beneficiary of the agreement or when a preexisting agency relationship makes it equitable for the nonsignatory to impose the duty to arbitrate. (*DMS Services, supra*, 205 Cal.App.4th at p. 1353; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513.) The nonsignatory bears the burden of establishing it should be treated as a party to the arbitration agreement. (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 15 (*Jones*).)

Fess Parker and the individual defendants contend they are entitled to enforce the arbitration provision as third party beneficiaries of the Agreement or as Hilton's agents. Tobin argues they waived this argument by failing to raise it in the trial court. Although all defendants moved to compel arbitration, Fess Parker and the individual defendants did not specify they were relying on the third party beneficiary and agency exceptions. They asserted that because "all of [Tobin's] claims arise out of the

'employment context,' it is beyond dispute that the instant matter falls within the purview of the . . . Agreement." Nonetheless, the trial court found the Agreement applies only to Tobin's claims against Hilton, and that "[n]o evidence [was] presented that, contrary to the express terms of the Agreement, [it] applies to claims by Tobin against others." We conclude the issue was preserved for review.

The third party beneficiary exception applies if "'. . . the contracting parties . . . intended to benefit [the] third party and such intent appears on the terms of the contract. [Citation.] . . .'" (*California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127, 1137-1138.) On its face, the Agreement governs the relationship between Tobin and his employer. As the trial court observed, "[c]onsidering the terms of the Agreement, and in particular, the at-will provision, it is clear that the 'Company' is intended to be Tobin's employer." The Agreement does not reference Fess Parker or the individual defendants. Indeed, it does not mention Hilton. The trial court found, as a matter of fact, "that Hilton is the 'Company' which is the signatory to the Agreement." Defendants do not demonstrate that the language of the Agreement evidences an intent to benefit parties outside the Tobin-Hilton employment relationship.

Rather, defendants rely upon the boilerplate allegation in the complaint that "each of the defendants [was] acting as the partner, agent, servant, and employee of each of the remaining defendants, and in doing the things alleged herein, was acting within the course and scope of such agency and with the knowledge and consent of the remaining defendants." (Italics omitted.) They contend, based primarily on *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, and *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199 (*24 Hour Fitness*), that this allegation supports application of the agency exception. We are not persuaded. The complaint in *Dryer* alleged the nonsignatory defendants were parties to the agreement containing the arbitration clause and had breached it. (*Dryer,* at p. 418.) The court determined that because the nonsignatories were liable *only* if they were agents of the principal, they were entitled to enforce the arbitration clause. (*Ibid.*) Fess Parker and the individual defendants do not

5

demonstrate that their liability to Tobin necessarily hinges upon an agency relationship with Hilton.  As we shall explain, the relationship among the defendants is less than clear.

In *24 Hour Fitness,* the plaintiff sued her former employer and other employees for sexual harassment in the workplace.  The nonsignatory defendants sought to enforce an arbitration agreement between the plaintiff and the employer.  (*Id.* at 66 Cal.App.4th at pp. 1211-1212.)  It was undisputed that the nonsignatories were employees of the employer; the issue was whether they were acting within the scope of that employment.  (*Ibid.*)  Here, it is uncertain whether the individual defendants are employees of Hilton, Fess Parker or another entity.  The complaint ambiguously alleges they are employees of "Hilton/Fess Parker."  Tobin's attorney submitted a declaration stating defendants' counsel informed her that "Tobin has many potential employers -- not just the Hilton/Fess Parker.  The last potential employer identified was the Doubletree.  In fact, it was requested that both the Hilton/Fess Parker be dismissed and the Doubletree entity be added."  Defendants presented no declaration or other evidence on this issue.

*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446 (*Barsegian*) is instructive.  As in this case, the nonsignatory defendants claimed that because the complaint alleges that all defendants are agents of one another, they may enforce the arbitration agreement between the plaintiff and other defendants.  The court disagreed, concluding that the boilerplate allegation, in and of itself, is not a judicial admission of a mutual agency relationship.  It explained:  "Complaints in actions against multiple defendants commonly include conclusory allegations that all of the defendants were each other's agents or employees and were acting within the scope of their agency or employment.  Prominent treatises, while recognizing that the Supreme Court has described such allegations as 'egregious examples of generic boilerplate' [citation], still advise that 'such allegations may be necessary,' especially 'at the outset of a lawsuit, before discovery.'  [Citations.]  If . . . defendants' argument were sound, then in every multi-defendant case in which the complaint contained such boilerplate allegations of mutual agency, as long as *one* defendant had entered into an arbitration agreement with the plaintiff, *every* defendant would be able to compel arbitration, regardless of how

6

tenuous or nonexistent the connections among the defendants might actually be." (*Id.* at p. 451.)

A judicial admission is "*a factual allegation by one party that is admitted by the opposing party*," with the result being the "allegation is removed from the issues . . . because the parties *agree* as to its truth." (*Barsegian, supra,* 215 Cal.App.4th at p. 452; *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48.) Nothing in the record or briefs suggests defendants concede that a mutual agency relationship exists among them. The record reflects the individual defendants may be employees of Hilton, Fess Parker or Doubletree. The relationship between Hilton and Fess Parker also is unexplained. Indeed, it is possible that Tobin was working for an entity other than Hilton at the time of his discharge. Given this uncertainty, we conclude Fess Parker and the individual defendants have not met their burden of establishing their right to enforce the arbitration provision. (See *Jones, supra,* 195 Cal.App.4th at p. 15; *Barsegian*, at pp. 452-453.) Any finding of an agency relationship based on the record before us would be speculative at best.

*Labor Code Section 201 Claim*

Labor Code section 201 states that "the wages earned and unpaid at the time of [an employee's] discharge are due and payable immediately." The sixth cause of action alleges that Tobin did not receive his final paycheck until two weeks after termination. It states that "[b]y way of this action, [Tobin] is requesting: waiting time penalties and liquidated damages." Defendants contend the trial court erred by denying Hilton its right to arbitrate this claim. We agree.

The Agreement provides for arbitration of "any claim for . . . unpaid wages." Labor Code section 229 states that "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Hence, "if a cause of action seeks to collect due and unpaid wages pursuant to [Labor Code] sections 200 through 244, that action can be maintained in court, despite an agreement to arbitrate." (*Lane, supra,* 224 Cal.App.4th at p. 684.)

7

Tobin's cause of action does not seek to collect due and unpaid wages. (Lab. Code, § 229; *Lane, supra*, 224 Cal.App.4th at p. 684.)  He concedes he received his final wages; his claim is for waiting time penalties and liquidated damages for late payment.  *Lane* held that an action for waiting time penalties is not exempt from arbitration under Labor Code section 229.  (*Lane,* at p. 684.)  Tobin does not dispute this holding, but claims he also is seeking unpaid wages for the hours he was away from work to vote.[3]  That allegation is not in the sixth cause of action, but rather in the seventh cause of action for injunctive relief.  The trial court denied the motion to compel arbitration of that claim, and that portion of the decision is not on appeal.  We conclude the trial court erred by finding the sixth cause of action is exempt from arbitration.  (See Lab. Code, § 229; *Lane,* at p. 684.)

*Stay of Arbitration Pending Court Litigation*

Defendants contend the trial court improperly invoked section 1281.2, subdivision (c)(4), when it elected to stay arbitration of the arbitrable claims against Hilton pending litigation of the claims against the other defendants and the nonarbitrable claims involving Hilton.[4]  They contend the trial court misinterpreted the Agreement's express incorporation of the procedural provisions of the Federal Arbitration Act (FAA),

_____

[3] Tobin requests that we take judicial notice of a document purporting to show that he was not paid wages when he exercised his right to vote.  As defendants point out, this document was not presented to the trial court.  We deny Tobin's request as an "untimely attempt to introduce new evidence on appeal."  (*Templeton Action Committee v. County of San Luis Obispo* (2014) 228 Cal.App.4th 427, 433; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

[4] Subdivision (c) of section 1281.2 provides that the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."  It further states:  "If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) . . . , the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding."  (*Ibid*.)

and instead applied CAA for all purposes, including section 1281.2, subdivision (c). They assert that had the trial court applied the FAA, as required by the express terms of the Agreement, the court litigation would have been stayed and the arbitration ordered to proceed first.

"[A]pplication of the [CAA] is not pre-empted by the [FAA], 9 U.S.C. § 1 et seq., in a case where the parties have agreed that their arbitration agreement will be governed by the law of California." (*Volt Info. Sciences v. Stanford Univ.* (1989) 489 U.S. 468, 470.) Here, the Agreement refers to both the FAA and the CAA. The third paragraph states: "Arbitration under this Agreement shall be before a single arbitrator in the county in which the dispute arose and will be conducted in accordance with the [FAA] in conformity with the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Where required by state law, e.g., the [CAA], the arbitration will be conducted in accordance with applicable state law." The next paragraph provides that "[a]ny court of competent jurisdiction may enter judgment upon the [arbitrator's] award, either by (i) confirming the award or (ii) vacating, modifying, or correcting the award on any ground referred to in the [FAA] or applicable state law (in California, Code of Civil Procedure §§ 1286 et seq.)."

Based on this language, the trial court determined the parties intended that the Agreement be construed under the CAA. We concur. If, as defendants contend, the parties intended for the FAA to apply for all purposes, there would have been no need to reference the CAA. (See *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507 ["when interpreting a contract, we strive . . . to avoid interpretations that render any portion superfluous, void or inexplicable"].) The more logical interpretation is that the FAA applies in the absence of applicable state law. As the court observed, "the introductory clause of the first quotation -- '[w]here required by state law, e.g., the California Arbitration Act' -- indicates that the CAA governs the application of the arbitration agreement generally. This introductory clause is consistent with the other quoted statement specifically referencing the applicable state law as the CAA and in

particular the provisions of the CAA relevant to the subject of that sentence [i.e.,] enforcement of the arbitration award."

Moreover, even if an ambiguity exists as to the applicability of the FAA, it would not preclude application of section 1281.2, subdivision (c). The California Supreme Court has held that section 1281.2, subdivision (c) neither conflicts with the FAA's provisions nor undermines or frustrates its policies. (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394.) We therefore reject the assertion that the trial court erred by applying it here.

Defendants contend that even assuming the CAA does apply, the trial court abused its discretion by staying arbitration of the FEHA claims against Hilton and ordering litigation of the remaining claims to proceed first. The parties do not dispute that overlapping issues exist between the arbitrable and nonarbitrable claims that could lead to inconsistent results. (See § 1281.2, subd. (c).) The trial court found "[t]he overlapping issues do not necessitate a complete denial of arbitration of the arbitrable claims and the stand-alone agreement to arbitrate should be respected to permit arbitration of the claims subject to that agreement. As between (1) staying the litigation and proceeding with the arbitration and (2) proceeding with the litigation and staying the arbitration, . . . the more efficient and equitable approach here is to litigate first."

Only six causes of action against one of the five defendants are arbitrable. The majority are nonarbitrable. The record reflects the trial court considered the permissible statutory alternatives to address this situation and selected the one it found most appropriate. (See *Mercury Ins. Group v. Superior* Court (1998) 19 Cal.4th 332, 351; § 1281.2, subd. (c)(1)-(4).) That "the [trial] court might reasonably have chosen some other means to avoid a conflicting ruling on a common issue of law or fact [is] immaterial. The reasonableness of an approach that was not selected does not entail the unreasonableness of the one that was." (*Mercury*, at p. 351.) Defendants have not demonstrated that the court's decision to stay the arbitration pending litigation of the non-arbitrable claims was an abuse of discretion. (See *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.)

10

DISPOSITION

The order granting in part and denying in part appellants' motion to compel arbitration is reversed to the extent it denies arbitration of the sixth cause of action as to Hilton. The order is amended to reflect that the first through sixth causes of action against Hilton shall be severed from the action and sent to arbitration following disposition of the remaining issues in the case. In all other respects, the order is affirmed. Respondent shall recover his costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.


11

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Jackson Lewis P.C., Mindy S. Novick, Sherry L. Swieca for Defendants and Appellants.

Kimberly A. Cole for Plaintiff and Respondent.