**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DKS, INC., | No.   15-16589 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 2:15-cv-00132-MCE-DAD |
| CORPORATE BUSINESS SOLUTIONS, INC., | |
| Defendant-Appellant, | MEMORANDUM* |
| and | |
| OLIVER SINTOBIN; T. J. ELISON, | |
| Defendants. | |

Appeal from the United States District Court

for the Eastern District of California

Morrison C. England, Junior,  District Judge, Presiding

Argued and submitted October 21, 2016

San Francisco, California

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

Before: HAWKINS and CALLAHAN, Circuit Judges, and SOTO,[**] District Judge.

Corporate Business Solutions (CBS) appeals the district court's order denying a motion to compel arbitration. We have jurisdiction under 9 U.S.C. § 16, and we affirm.

"We review the denial of a motion to compel arbitration de novo. Underlying factual findings are reviewed for clear error, while the interpretation and meaning of contract provisions are reviewed de novo." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotations and citations omitted). CBS primarily argues that the district court misapplied the doctrine of "fraud in the inception" to invalidate the agreement containing the arbitration provision. We disagree.

In California, a contract is void—and any arbitration provision therein is unenforceable—if the party resisting arbitration can "show that the fraud went to the inception or execution of the agreement, so that the promisor did not voluntarily assent to any part of the purported contract of which the arbitration clause is a part." *Rice v. Dean Witter Reynolds, Inc.*, 235 Cal. App. 3d 1016, 1023 (1991), *overruled on another ground by Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996). Fraud in the inception may exist even if both parties had

2

"ample opportunity to read the [contract] in [its] entirety," because the party drafting the terms and conditions of a contract may do so "in such a way as not to apprise" the other party of its intentions. *Duick v. Toyota Motor Sales, U.S.A., Inc.*, 198 Cal. App. 4th 1316, 1323 (2011).

Assuming that the allegations in the complaint are true, as we must do at this stage of the litigation, "a reasonable reader in [DKS, Inc.'s (DKS)] position would not have known that [it] was signing up to be the target of" CBS's alleged scheme. *Id.* at 1319. That alleged scheme included but was not limited to: funneling funds from DKS to CBS; forging financial documents to secure additional funding that could be funneled to DKS's projects to pay the hourly bills run up by CBS employees; securing additional loans to pay those hourly bills; destroying DKS's relationship with clients and creditors; and fraudulently representing to DKS's payroll company that a CBS employee had been hired as an executive and subsequently receiving paychecks for that phantom position. Nothing in the boilerplate contract signed by the parties could have put DKS on reasonable notice that it was subjecting itself to such activity; therefore, the contract was void at its inception. In sum, the complaint contains over thirty paragraphs of specific actions that CBS employees undertook to enrich their business at DKS's expense. If true, these acts substantiate DKS's claim that there was never a meeting of the minds

despite both parties having signed the contract.[1]

**AFFIRMED.**[2]

---

[1] The specificity of these pleadings mitigates against CBS's concerns that this ruling could open the door to artful pleadings by plaintiffs to avoid arbitration. Additionally, district courts regularly scrutinize complaints to ensure allegations are sufficiently plausible to give rise to a reasonable inference that plaintiffs are entitled to relief, thereby preventing plaintiffs from making bare allegations of "fraud in the inception" to escape motions to compel arbitration. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

[2] Because we find that the contract was void at its inception, we need not address whether DKS's claims fall within the arbitration provision's scope.

*DKS, Inc. v. Corporate Business Solutions, Inc.*, 15-16589

HAWKINS, Senior Circuit Judge, dissenting:

I respectfully dissent from the decision of my colleagues. Although I agree that California's claim of "fraud in the inception" is a form of fraud in the execution that could render an arbitration agreement unenforceable, this case does not present such a claim.

California courts explain that in a case of fraud in the inception "the promisor is deceived as to the very nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all" such that mutual assent is lacking. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996). A claim of fraud in the inception arises when "without any negligence on his part, a signer attaches his signature to a paper assuming it to be a paper of a different character." *Id.* at 420. Examples of such cases include a plaintiff who believed she was signing a contract to loan money, but the contract in fact authorized the defendant to sell plaintiff's stock, *Rice v. Dean Witter Reynolds, Inc.*, 235 Cal. App. 3d 1016 (1991), *overruled in part on other grounds by Rosenthal*, 14 Cal. 4th at 407; and a plaintiff who believed she was entering a contract to take a personality evaluation, but the contract instead provided that the plaintiff agreed to participate in an online marketing

campaign "prank," *Duick v. Toyota Motor Sales, U.S.A., Inc.*, 198 Cal. App. 4th 1316, 1321 (2011).

Far from alleging facts analogous to these California cases, DKS's complaint alleges that (1) it was fraudulently induced into the Consulting Agreement, and (2) CBS and its employees acted tortiously in their performance of the agreement. Although DKS alleges that the entire consulting arrangement was part of a fraudulent scheme, California distinguishes cases involving a "grand scheme" of fraud from cases involving fraud in the inception. *See Rosenthal*, 14 Cal. 4th at 418–19. Because DKS does not specifically allege that the arbitration provision itself was fraudulently induced, all claims falling within its scope are for the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).

Nor am I persuaded by DKS's alternative argument that the claims asserted in the complaint fall outside the arbitration provision's scope. Although the parties have indicated that the claims in the complaint have changed in some respects over the course of litigation, at least some of the claims in the complaint before us are subject to arbitration. For example, the complaint asserts a claim of professional negligence predicated on allegations that CBS breached duties owed to DKS as a result of the professional (consulting) services that "DKS *engaged* them to perform." Certainly,

2

that claim constitutes a "dispute[] of any kind between [DKS and CBS] arising out of or in connection with [the Consulting] Agreement."

Therefore, I would remand for the district court to compel arbitration on all remaining claims that fall within the arbitration provision's scope.