Filed 3/20/23  Perez v. O'Gara Coach Co. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VICTOR ANGELO PEREZ, Plaintiff and Respondent, v. O'GARA COACH COMPANY, LLC, Defendant and Appellant. | B320273 (Los Angeles County Super. Ct. No. 21STCV38295) |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Kolar & Associates, Elizabeth L. Kolar and Benjamin T. Runge for Defendant and Appellant.

Verum Law Group, Sam K. Kim, Yoonis Han; Mahoney Law Group, Kevin Mahoney and John A. Young for Plaintiff and Respondent.

_____

O'Gara Coach Company, LLC (O'Gara) appeals from an order denying its petition to compel arbitration. O'Gara's petition was based on arbitration provisions in a three-page dispute resolution agreement (DRA). The trial court held that O'Gara did not satisfy its burden to prove that respondent Victor Angelo Perez, a former employee, had consented to arbitrate his wage and hour claims. We affirm the trial court's order because O'Gara did not request a statement of decision, and therefore, under the applicable standards of appellate review, O'Gara would have had to demonstrate that, as a matter of law, the trial court erred in not compelling arbitration. O'Gara has failed to do so.

The evidence interpreted in the light most favorable to the trial court's order demonstrates that respondent Perez did not consent to the material terms of the DRA because O'Gara never provided them to him. Taking all inferences in favor of the trial court's ruling, the court credited Perez's evidence that O'Gara provided only the signature page and represented that the purpose of the DRA was simply to update Perez's personnel file. O'Gara's reliance on (1) the fact that Perez signed the one page provided to him, and (2) the presumption that a party who signs a contract has read it is misplaced because the evidence indicates Perez did not know, or have a reasonable opportunity to know the material terms of the DRA. Although on appeal, O'Gara argues that the trial court should have compelled arbitration based on a different agreement, O'Gara did not raise that agreement in its petition to compel and does not show the trial court erred in not relying on an agreement the specific performance of which O'Gara never sought to compel.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Complaint*

On October 18, 2021, Victor Angelo Perez filed a class action complaint against O'Gara on behalf of himself and all persons similarly situated. Perez's causes of action included allegations of O'Gara's failure to pay wages and overtime, failure to provide meal and rest breaks, failure to reimburse business expenses, failure to maintain accurate wage statements, violation of Business and Professions Code section 17200 et seq., and violation of Labor Code section 2699 et seq. Perez demanded a jury trial. Perez sought to represent " 'all current and former employees that have been paid on an hourly basis by' " O'Gara during a four-year time period. Perez alleged he worked for O'Gara from approximately November 2016 to June 16, 2021. Perez also alleged that O'Gara sold exotic and luxury vehicles.

### 2. *Petition to compel arbitration*

O'Gara petitioned to compel arbitration. According to O'Gara: "On December 26, 2019, Perez executed a Dispute Resolution Agreement with O'Gara which contains an express Arbitration Provision that requires binding arbitration of 'all disputes that might arise out of or be related in any way to [Perez's] employment by [O'Gara .] . . .' " O'Gara further argued that in the DRA O'Gara agreed that he would bring claims only in his individual capacity and " 'agree[d] to waive any substantive or procedural rights . . . to bring or participate in an action brought on a class or collective basis.' " O'Gara stated: "By way of this Petition, O'Gara moves to compel arbitration of this dispute with Perez pursuant to the written arbitration provision of the Dispute Resolution Agreement." O'Gara represented that:

3

"Perez was given an opportunity to review the Dispute Resolution Agreement, including the arbitration provision, prior to executing it."

In her declaration, Jannine Tejeda, O'Gara's human resources director, stated that on December 26, 2019, Perez "executed Defendant's Dispute Resolution Agreement via wet ink signature." Tejeda also asserted: "Defendant's Human Resources representatives were available and willing to explain any employment paperwork to Plaintiff when he executed the Dispute Resolution Agreement. To my knowledge, Plaintiff never voiced any concern about this agreement." Tejeda did not aver that she or any O'Gara representative communicated such availability to Perez.

Tejeda attached a copy of the DRA to her declaration. The DRA consists of three pages. The first two contain the terms of the DRA and the final page contains a signature line. The following text is on page three above the signature line: "My signature below confirms the fact that I have read, understand, and voluntarily agree to be legally bound to all of the above terms. I further understand that this agreement requires the company and me to arbitrate any and all disputes that arise out of my employment, and that I and the company are giving up our rights to a trial by jury. [¶] Do not sign until you have read the above acknowledgment and agreement." (Boldface & some capitalization omitted.) Perez signed the DRA on December 26, 2019. O'Gara did not sign the DRA. The following text appears after the signature line: "Give a copy to employee and retain original in personnel file." (Capitalization omitted.) The page also contains the number three at the bottom.

4

The first provision on page one of the DRA provides: "I and O'Gara Coach Company, LLC ('the Company') agree to utilize binding individual arbitration to resolve all disputes that might arise out of or be related in any way to my employment by the Company. Such disputes include, but are not limited to, claims I might bring against the Company for wrongful termination, discrimination, harassment, retaliation, breach of contract, wage and hour violations, and torts such as invasion of privacy, assault and battery, or defamation. Such disputes also include claims that the Company might bring against me such as, for example, theft of money or trade secrets, breach of a confidentiality agreement, or breach of a contract. I and the Company each specifically waive our respective rights to bring such claims against the other in a court of law and to have a trial by jury."

The second provision provides in part: "The only exceptions to binding arbitration shall be for claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, claims for benefits brought before the Employment Development Department, claims for wages brought before the California Labor Commissioner, or other claims that are not subject to arbitration under [the] law." Provision 11, the last provision on page two provides: "I confirm that I have had time to read this agreement and ask the Company's representative any questions I had about the agreement prior to signing this agreement."

### 3. *Plaintiffs oppose the petition to compel arbitration*

According to Perez's opposition to the petition to compel: "The 2019 Agreement [the DRA] was provided in or about December 2019, during Plaintiff's employment with Defendant

5

[Citation.] Defendant's Controller, Bertha Aguiano walked to Plaintiff's desk during work hours and handed him a one-page document to sign. [Citation.] When Plaintiff asked what the document was for, Bertha stated that the signature was required to 'update' his personnel file. [Citation.] Bertha stood at Plaintiff's desk until he signed the document. [Citation.] Plaintiff *never* saw or received a copy of the first two pages of the 2019 Agreement [the DRA], until after the lawsuit was filed."

Perez argued that he did not agree to arbitrate the disputes and the DRA was unconscionable. Perez also referenced a 2016 applicant statement agreement (ASA) not relied upon by O'Gara in its petition to compel arbitration.[1] Perez argued (1) that the 2016 agreement "is controlling" over the DRA; (2) he did not agree to arbitrate when he signed the 2016 agreement; and (3) the terms of the 2016 agreement were procedurally and substantively unconscionable. Perez also argued that his causes of action for collection of unpaid wages may be pursued regardless of any agreement to arbitrate.

---

[1] In the words of *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 128, the text of the 2016 ASA was " 'visually impenetrable' and 'challenge[s] the limits of legibility.' " The parties do not identify the size of the font, but based on our review of the text, it is extremely small. As in *Kho,* "A layperson trying to navigate this block text, printed in tiny font, would not have an easy journey." (*Ibid*.) Respondent does not quote the entire alternative dispute resolution provision in the ASA. We need not "try[ ] to navigate this block text printed in tiny font" because it is irrelevant to the appeal as explained in part C.4. of the Discussion.

### 4. *O'Gara's reply*

O'Gara acknowledged that its petition "did not mention the 2016 Agreement." Among other things, O'Gara argued plaintiff's testimony that he was provided only the last page of the agreement was "dubious at best" and lacked credibility.

### 5. *Trial court's March 3, 2022 minute order*

The court's March 3, 2022 minute order provides: "The Court after reviewing and considering all moving party and opposing party papers, and arguments of counsel, makes the following ruling: [¶] The Motion to Compel Arbitration is DENIED, for the reasons stated on the record. [¶] Plaintiff to amend the complaint to add PAGA claims by March 17, 2022. Deadline for defendant to file an answer is April 7, 2022." On March 4, 2022, Perez filed a first amended class action complaint.

O'Gara did not request a statement of decision and the trial court did not provide a statement of decision. On March 29, 2022, O'Gara filed a notice of appeal from the March 3, 2022 order. O'Gara chose to proceed by way of an appendix and without a record of the oral proceedings in the superior court.

## DISCUSSION

### A. Standards of Review

The trial court must issue a statement of decision for a ruling denying a petition to compel arbitration if a party requests one. (*Acquire II, Ltd. v. Cotton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.) "A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its

7

decision.  Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence.  [Citations.]  This doctrine 'is a natural and logical corollary to three fundamental principles of appellate review:  (1) a judgment is presumed correct;  (2) all intendments and presumptions are indulged in favor of correctness;  and (3) the appellant bears the burden of providing an adequate record affirmatively proving error.'  [Citation.]"  (*Ibid.*; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' "].)

" ' "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration." ' [Citation.]" (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).)  The standard of review varies depending on the basis for the trial court's denial of the petition.  (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166 (*Gamboa*).)  Generally, we review an order denying a petition to compel arbitration for abuse of discretion except when the petition presents a pure question of law.  (*Ibid.*)  When the trial court's ruling turns on questions of fact, the substantial evidence standard applies, including deferring to the trial court's credibility findings.  (*Ibid.*)

"[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement." (*Fleming v. Oliphant Financial, LLC* 88 Cal.App.5th 13, 18 (*Fleming*).)  This is significant to our standard of review here because "based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding

8

is erroneous as a matter of law." (*Fabian*, *supra*, 42 Cal.App.5th at p. 1066; see *Gamboa, supra*, 72 Cal.App.5th at p. 166.) Put another way, in order to prevail on appeal, O'Gara must show as a matter of law, that the evidence compelled a finding that Perez agreed to arbitrate his dispute with O'Gara. (*Gamboa*, at p. 166.) This is a difficult task given that we must resolve all factual and credibility findings in favor of respondent. (*Id.* at p. 167.) Additionally, we presume the trial court found O'Gara's evidence " ' "lack[ed] sufficient weight and credibility to carry the burden of proof. [Citations.] . . . ." ' [Citation.]" (*Fabian*, at p. 1067.)

## B.    Legal Background

"In evaluating whether a disputed matter requires arbitration, the focus is preliminarily placed on any agreement by parties to do so. ' "Under 'both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate.' " ' [Citations.] The threshold question requires a response because if such an agreement exists, then the court is statutorily required to order the matter to arbitration. Code of Civil Procedure section 1281.2 provides, in relevant part: 'On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists.' [Citation.] This initial issue also reflects the very plain principle that you cannot compel individuals or entities to arbitrate a dispute when they did not agree to do so. ' "[T]here is no policy compelling persons to accept arbitration of controversies that they have not agreed to arbitrate." '

9

[Citation.]" (*Fleming, supra*, 88 Cal.App.5th at p. 19; see also *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236, ["it is a cardinal principle that arbitration . . . 'is a matter of consent, not coercion' "]; *Costa v. Road Runner Sports, Inc.* (2022) 84 Cal.App.5th 224, 233 ["While both the Federal Arbitration Act [citation] and California law favor arbitration, a party is not required to arbitrate his or her claims absent consent."].)

"Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.' [Citations.] 'If there is no evidence establishing a manifestation of assent to the "same thing" by both parties, then there is no mutual consent to contract and no contract formation.' [Citations.] 'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.' [Citations.]" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208.)

## C. O'Gara As the Party Seeking Arbitration Failed to Establish the Existence of an Arbitration Agreement

### 1. *O'Gara does not show as a matter of law that Perez agreed to the DRA*

In *Fleming*, the appellate court questioned how a party could have consented to an arbitration agreement "that he was not provided." (*Supra*, 88 Cal.App.5th at p. 21.) The defendant, who sought to enforce an arbitration agreement, did not provide a signed arbitration agreement, but instead provided exemplars of "Cardmember Agreement" that included an arbitration provision.

10

(*Id*. at p. 17.) The plaintiff denied receiving any exemplar and "denied ever agreeing to settle any disputes through arbitration . . . ." (*Id*. at p. 18.) The appellate court explained that the threshold issue is whether an agreement to arbitrate exists. (*Id*. at pp. 18–20.) The court concluded no agreement to arbitrate existed because the defendant failed to make a showing that it had provided the alleged arbitration agreement to the plaintiff. (*Id*. at pp. 23, 25; see also *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 602 [holding the defendant could not show consent to arbitrate where the evidence did not show defendant provided plaintiff the arbitration agreement].)

Here, interpreting the facts in accord with our standard of review, as in *Fleming*, there was evidence that Perez did not consent to arbitrate disputes because O'Gara never provided the substantive terms of the DRA to Perez. Specifically, pages one and two of the DRA contain the material terms, and according to Perez, O'Gara never provided him with those pages. Additionally, when Perez inquired, O'Gara's representative did not disclose that the DRA constituted an arbitration agreement, but instead represented that its purpose was to update Perez's personnel file. Although the last page of the DRA requires O'Gara's representative to "give a copy to employee," O'Gara did not provide it to Perez. Thus, the evidence supports the conclusion that O'Gara did not provide the terms of the DRA to Perez, a conclusion that is fatal to finding he consented to arbitrate his claims.[2]

_____

[2] We recognize that, in contrast to *Fleming*, O'Gara received and signed the signature page and consider the consequence of that fact in the next section.

11

O'Gara's contrary argument relies on evidence and inferences inconsistent with our standard of review.[3]  Specifically O'Gara emphasizes (1) Perez should have recognized that the signature page provided to him was not the only page of the DRA, and did not request additional pages; (2) O'Gara did not deny him the opportunity to receive the complete DRA; and (3) Perez never objected to signing the DRA.  By emphasizing the evidence in the light most favorable to it, O'Gara ignores the appropriate standard of review and does not show that the trial court erred. (*Gamboa*, *supra*, 72 Cal.App.5th at pp. 166, 170.)

> 2.  *The fact that Perez signed page three does not, as a matter of law, demonstrate mutual assent*

In *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696 (*Metters*), a case cited by O'Gara, the appellate court explained:  " '[O]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.  A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.  [Citations.]'  [Citation.]  This is so even where the contracting party relied on misrepresentations by the other party that it was not necessary to read the contract before signing.  '[O]ne party's unreasonable reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis, under the doctrine of fraud in the execution, for permitting that party to avoid an arbitration agreement contained in the contract.'  [Citation.]"  (*Id*. at pp. 701–702, italics omitted.)

---

[3] O'Gara incorrectly states that this court's standard of review is de novo.

In addition to stating the general rule, *Metters* identifies an exception relevant here: "But if the one who signs the instrument is unaware of the contractual provisions, he cannot be said to have agreed to them. Thus, '[a]n exception to [the] general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient. In such a case, no contract is formed with respect to the undisclosed term. [Citations.]' [Citation.]" (*Metters, supra,* 161 Cal.App.4th at p. 702.)

Here, according to Perez, he was unaware of the contractual provisions in the DRA because O'Gara did not provide them to him. As noted in the previous section, O'Gara did not give Perez the substantive terms of the DRA and represented that the one-page document he did receive and sign served merely to update his personnel file. The one page provided to Perez does not reference O'Gara by name and was not countersigned by any O'Gara representative, which further undermines O'Gara's claim that Perez necessarily assented to an arbitration agreement with O'Gara. The foregoing evidence supports the trial court's implicit finding that even though Perez signed a one-page document, he had not received the material terms of the DRA, and therefore could not have consented to them. (*Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 993 ["[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.].)

13

### 3. O'Gara's reliance on the general presumption that one who signs a contract has read it is misplaced

O'Gara argues that Perez signed the DRA and "[t]here is a presumption that one who signs a contract has read it." O'Gara cites *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, which explains that " '[r]easonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement. [Citation.]' [Citation.]" (*Id.* at p. 1674.) O'Gara also cites *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 for the proposition that "it is generally unreasonable . . . to neglect to read a written agreement before signing it" even if an individual is told that it is not necessary to read.[4] (*Rosenthal*, at p. 424.) In

---

[4] O'Gara cites other authority involving circumstances in which the party seeking to avoid a contract had the opportunity to read it but failed to do so. In *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1587, the court held that, for purposes of summary judgment, the plaintiff's statement that he had not read the agreement but signed it only because his attorney told him to do so did not raise a triable issue with respect to mutual assent. *Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791 also cites the general rule that " 'one who assents to a contract cannot avoid its terms on the ground he failed to read it before signing it. [Citations.]' [Citation.]" (*Id.* at p. 1816.) *Constantian v. Mercedes-Benz Co.* (1936) 5 Cal.2d 631, 634 holds that there is a presumption that a party who signs a contract read the contract. In that case, the court explained that the party seeking to avoid the contract had " 'ample' " opportunity to review it and there was " 'no evidence' " to contradict the presumption that they had read the contract. (*Ibid.*) O'Gara does not explain how these cases apply to the

contrast to the person who lacks diligence and assents to a contract without reading it, a person may sign a contract without assenting to its terms where " 'a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has a reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent.' [Citations.]" (*Duick v. Toyota Motor Sales, U.S.A., Inc.* (2011) 198 Cal.App.4th 1316, 1321 (*Duick*).)

Interpreting the evidence in the light most favorable to the trial court's order, the evidence does not show, as a matter of law, that Perez lacked reasonable diligence or was negligent in failing to read the entire DRA before signing it. Again, there was evidence that Perez neither knew, nor had an opportunity to review the essential terms of the DRA, that O'Gara misrepresented the purpose of the one-page document Perez signed, which was not signed by O'Gara and did not even reference O'Gara. There was also evidence that O'Gara's representative stood by Perez's desk until he signed it, providing him no time to consider the DRA or consult with O'Gara's human resources personnel and request additional explanation. O'Gara violated the DRA's own terms by failing to provide him with a copy after he signed it and thereby depriving him of the opportunity to review the entire agreement even after he signed it. It is immaterial whether O'Gara's misrepresentation "was intentional, negligent, or even innocent" (*Duick, supra,*

---

situation where the party who drafted the agreement and seeks to enforce it failed to provide its terms to the other party.

198 Cal.App.4th at p. 1323, fn. 4), because regardless of whether O'Gara was at fault, the evidence supports the trial court's implicit conclusion that Perez was not negligent in failing to read the entire DRA prior to signing it.

O'Gara cites *Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 676, but that case supports Perez's position. In *Ramos*, a Spanish-speaking employee received only an English version of a contract and a purported Spanish translation of the contract. (*Id.* at p. 687.) The employee relied on the fact that the employer "provided him with what purported to be a Spanish translation of the English Contract he was being asked to sign, a Spanish translation which did *not* contain the arbitration agreement." (*Ibid.*) The appellate court held "there was no mutual assent because the arbitration agreement was hidden in the English Contract" and concluded that there was no arbitration agreement because of no mutual assent. (*Id.* at pp. 687–688.) In *Ramos*, the employee did not consent to the term that was not included in the Spanish agreement provided to him. Although unlike in *Ramos*, there was no translation issue, there was evidence that O'Gara provided Perez only part of the DRA. Accordingly, O'Gara has failed to demonstrate as a matter of law, that Perez assented to provisions O'Gara never had shown him.

> 4.    *O'Gara shows no error in denying a petition to compel based on the 2016 ASA which was not referenced in the petition to compel*

On appeal, O'Gara argues that if this court finds the DRA invalid, the arbitration clause in the 2016 ASA is valid and requires arbitration of Perez's claims. O'Gara did not move to compel arbitration based on the ASA. In its reply brief in the

16

trial court, O'Gara stated: "Plaintiff correctly points out that O'Gara's Petition did not mention the 2016 Agreement in its moving papers . . . ."

"A petition to compel arbitration is a suit in equity seeking specific performance of an arbitration agreement." (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057; see also *Rice v. Downs* (2016) 248 Cal.App.4th 175, 185.) Code of Civil Procedure section 1281.2 provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that" certain exceptions apply. (Code. Civ. Proc., § 1281.2.) Just as section 1281.2 requires the "existence of a written agreement" a cause of action for specific performance requires (among other things) an underlying contract. (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472.)

The only agreement for which O'Gara sought specific performance was the DRA. On appeal, O'Gara demonstrates no error in the trial court's denial of its petition to arbitrate based on a purported arbitration agreement it claimed below was not at issue.

## D. O'Gara's Remaining Arguments Depend on the (Incorrect) Premise that Perez Agreed to the DRA

Because we conclude that there was no mutual assent to the DRA, there is no arbitration agreement to enforce. (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering,*

17

*Inc.* (2001) 89 Cal.App.4th 1042, 1049.) We therefore do not address O'Gara's arguments that the DRA (1) satisfied the standards in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83; (2) remains valid even though it was not signed by O'Gara's president; and (3) was not unconscionable. All of those arguments presuppose the existence of an arbitration agreement.

O'Gara also argues that this court "should direct the trial court to dismiss, with prejudice, his [Perez's] request for class-wide relief." Additionally, O'Gara claims that the PAGA claim should be dismissed. It appears that those arguments are premised on the enforceability of the DRA.[5] Because we conclude O'Gara has not demonstrated the parties agreed to the DRA, we need not further consider O'Gara's request to dismiss certain claims based on language contained in the DRA.

_____

[5] A provision on page one of the DRA states in pertinent part: Claims pursued "in arbitration under this agreement shall be brought" in Perez's "individual capacity." "This agreement shall not be construed to allow or permit the consolidation or joinder of claims of other claimants, or to permit such claims to proceed as a class or collective action." "If under appliable law a representative claim under the California Private Attorneys General Act ('PAGA') is found to be unwaivable and such an action is pursued in court, I and the Company agree that any such PAGA claim will be severed and stayed pending resolution of claims that are arbitrable."

## DISPOSITION

The order denying O'Gara Coach Company, LLC's petition to compel arbitration is affirmed. Victor Angelo Perez is awarded his costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

WEINGART, J.

19